SOUTHEASTERN SHELTER CORPORATION and JERRY CHESSON, Plaintiffs v.
BTU, INC., PAUL SILCOX and MARC GILFILLAN, Defendants

No. COA01-1257

(Filed 3 December 2002)

1. Joint Venture— no joint sharing of profits—no fiduciary relationship

The parties' business relationship was not a joint venture, because: (1) plaintiffs failed to allege in their complaint that they were entitled to share in defendants' profits under the terms of the agreement; (2) the end result of the parties' agreement that defendants essentially would be taking over plaintiffs' fireproofing business does not establish that the agreement was a joint venture; (3) the evidence showed that defendants agreed to pur-

SOUTHEASTERN SHELTER CORP. v. BTU, INC.

[154 N.C. App. 321 (2002)]

chase the assets of plaintiffs' business but only after a five-month period during which plaintiff individual would work for defendants in a capacity that would enable defendants to learn the fireproofing business; and (4) the agreement did not indicate that it established a principal-to-agent relationship which is a necessary fiduciary relationship between the parties.

**2. Fiduciary Relationship— breach of fiduciary duty—failure to show joint venture—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' claim for breach of fiduciary duties arising out of the parties' business relationship, because: (1) the complaint revealed that this claim was dependent on the existence of a joint venture; and (2) plaintiffs failed to show the elements of a joint venture.

**3. Fraud— constructive—relationship of trust and confidence—failure to show joint venture—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' claim for constructive fraud arising out of the parties' business relationship, because: (1) plaintiffs' claim was based on a relationship of trust and confidence that allegedly arose from the parties' joint venture; and (2) plaintiffs failed to show a joint venture.

**4. Unfair Trade Practices— failure to show joint venture— failure to show aggravating circumstances—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' claim for unfair and deceptive trade practices arising out of the parties' business relationship, because: (1) the language in the complaint revealed that plaintiffs have tied this claim to the existence of a joint venture; (2) plaintiffs failed to show a joint venture; and (3) while plaintiffs have provided sufficient evidence of a contractual relationship between the parties, they have failed to show sufficient aggravating circumstances.

**5. Unjust Enrichment— failure to show joint venture—contract between parties governs—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' claim for unjust enrichment arising out of the parties' business relationship, because:

(1) the evidence showed the parties entered into a contract but plaintiffs failed to assert a claim for breach of contract; and (2) the law will not imply a contract since a contract existed between the parties.

### 6. Conversion— business relationship—summary judgment

The trial court erred by granting summary judgment in favor of defendants on plaintiffs' claim for conversion arising out of the parties' business relationship, because: (1) defendants converted plaintiffs' proprietary information, including customer lists, contact lists, records, and historical data; (2) defendants removed certain tangible personal property belonging to plaintiffs including a photocopier, gas paint sprayer, air compressor, and computer software; (3) according to the terms of the parties' agreement, defendants were not entitled to any of plaintiffs' assets until the end of the business relationship when the parties had agreed on asset valuations and plaintiffs had received the balance due under the agreement; and (4) the fact the parties had a contract does not prevent this claim.

Appeal by plaintiffs from order entered 28 June 2001 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 12 June 2002.

*Randolph M. James, P.C., by Randolph M. James, for plaintiff-appellants.*

*Newsom, Graham, Hedrick & Kennon, P.A, by William P. Daniell and Kenneth R. Murphy, III, for defendant-appellees.*

CAMPBELL, Judge.

Plaintiffs, Southeastern Shelter Corporation ("SES") and Jerry Chesson ("Chesson"), appeal the trial court's order granting summary judgment in favor of defendants, BTU, Inc. ("BTU"), Paul Silcox ("Silcox") and Marc Gilfillan ("Gilfillan"), and dismissing with prejudice plaintiffs' claims for breach of fiduciary duties, constructive fraud, conversion, unfair and deceptive trade practices and restitution based on unjust enrichment. For the reasons discussed herein, we affirm in part and reverse in part.

Chesson is president and majority shareholder of SES. SES's principal business activity is the application of fireproofing materials to construction projects. Silcox is president of BTU. Gilfillan is the reg-

istered agent, an incorporator and a shareholder of BTU. Defendants had no experience in the fireproofing business prior to their relationship with plaintiffs.

Plaintiffs seek to recover damages arising out of a dispute over a business relationship between the parties, the terms of which were never reduced to a signed writing. Plaintiffs contend the business relationship was a joint venture. Defendants deny the existence of a joint venture and contend the business relationship was an asset purchase agreement.

Plaintiffs allege in their complaint that the parties entered into a $250,000.00 joint venture agreement in February 1999. The agreement provided that defendants would pay plaintiffs a $50,000.00 advance good faith payment, with the remaining $200,000.00 to be paid by a promissory note. In exchange, plaintiffs would assist defendants with entry into the fireproofing business by: (a) providing use of SES's offices, facilities and equipment through 1 August 1999; (b) encouraging SES's employees to accept employment with defendants; (c) assuring Chesson would provide services as a consultant in order to train and advise defendants through 1 August 1999; (d) assuring Chesson would assist defendants in procuring $1,000,000.00 in contracts for the application of fireproofing materials through 1 August 1999; (e) assuring Chesson would provide services as a consultant on a contract basis after 1 August 1999; (f) providing SES's telephone number for BTU's use; and (g) transferring certain assets to defendants no later than 1 August 1999. In essence, plaintiffs would provide their knowledge, experience, goodwill, proprietary information and assets, to enable defendants to learn and enter the fireproofing business.

On the other hand, defendants contend the arrangement was an asset purchase agreement whereby plaintiffs would assist defendants with entry into the fireproofing business by making available its office space, equipment and personnel, for five months, at the end of which time defendants would purchase some or all of SES's assets. During the five-month period, defendants would pay Chesson to serve as a consultant and teach them the business while they determined which assets they ultimately wished to purchase from SES. On or before 1 August 1999, defendants were to provide Chesson with a list of the assets they wished to purchase, and tender payment in the amount of the value of the assets, at which time each party would have fulfilled its obligations under the agreement.

On or about 1 March 1999, defendants paid Chesson $25,000.00 in partial payment of the $50,000.00 good faith advance. Defendants occupied plaintiffs' facilities and began using plaintiffs' equipment and employees, while Chesson began working with defendants to teach them the fireproofing business.

From 1 March 1999 through 21 June 1999, BTU bid on, obtained and performed fireproofing contracts, used plaintiffs' office, equipment and employees to conduct its day-to-day operations, and benefitted from Chesson's knowledge and expertise by receiving numerous contracts with third parties for the application of fireproofing materials.

The parties operated under this arrangement until on or about 21 June 1999, when Chesson asked Silcox how much, when, and in what form Chesson would be paid the remainder of the money he was owed under the agreement. Chesson needed $75,000.00 for an unrelated purpose. Defendants told Chesson he could not be paid on that date, nor could they provide him an exact date on which he would be paid, because defendants were waiting for approval on a business loan. The parties then had a major disagreement concerning when defendants would tender the balance due Chesson, and Chesson reacted by changing the locks on SES's facilities and preventing access by defendants. Since 21 June 1999, the parties have operated separate fireproofing businesses in direct competition with one another.

Plaintiffs instituted this action on 16 July 1999, asserting claims for breach of fiduciary duties, constructive fraud, conversion, unfair and deceptive trade practices and restitution based upon unjust enrichment. Defendants answered and denied the essential allegations of plaintiffs' complaint. Defendant BTU counterclaimed against plaintiffs for breach of contract, conversion, restitution, and unfair and deceptive trade practices

Defendants filed a motion for summary judgment as to plaintiffs' claims only. Defendants argued they were entitled to summary judgment because the evidence, as a matter of law, failed to show the existence of a joint venture. Defendants were granted summary judgment by order entered 28 June 2001 and plaintiffs' claims were dismissed with prejudice. The trial court's order expressly states that BTU's counterclaims are still pending. The trial court certified the summary judgment order for immediate appellate review pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c) (2001). The moving party bears the burden of showing that no triable issue of fact exists. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-42 (1992). This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that the non-moving party cannot surmount an affirmative defense which would bar the claim. *Id.* Once the moving party has met its burden, the non-moving party must forecast evidence that demonstrates the existence of a *prima facie* case. *Id.* In reviewing the evidence at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988).

Defendants maintain the parties' business relationship was not a joint venture. Defendants further contend that, since plaintiffs based all of their claims on the premise that the parties' relationship was a joint venture, each of plaintiffs' claims was properly dismissed. Finally, defendants argue that the actions of Chesson prior to 1 August 1999 prevented defendants from fully performing their obligations under the agreement and that plaintiffs should not be allowed to take advantage of Chesson's actions by claiming defendants did not perform.

Plaintiffs argue defendants have failed to show the lack of any triable issue and that the evidence, when viewed in the light most favorable to plaintiffs, establishes each essential element of plaintiffs' claims.

[1] We first address whether the parties' agreement created a joint venture.

To establish a joint venture, " '[t]here must be (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of the profits*, and (2) *an equal right of control* of the means employed to carry out the venture.' " *Rhoney v. Fele*, 134 N.C. App. 614, 620, 518 S.E.2d 536, 541 (1999) (quoting *Edwards v. Bank*, 39 N.C. App. 261, 275, 250 S.E.2d 651, 661 (1970) (emphasis in original)).

SOUTHEASTERN SHELTER CORP. v. BTU, INC.

[154 N.C. App. 321 (2002)]

In *Pike v. Trust Co.*, 274 N.C. 1, 161 S.E.2d 453, (1968), the Supreme Court quoted with approval from *In re Simpson*, 222 F. Supp. 904, 909 (M.D.N.C. 1963), as follows:

> " 'A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term.
>
> . . .
>
> " 'Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties in which each has a right in some measure to direct the conduct of the other through a necessary fiduciary relation, will justify a finding that a joint adventure exists.'
>
> " 'To constitute a joint adventure, the parties must combine their property, money, efforts, skill, or knowledge in some common undertaking. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise.' "

*Pike v. Trust Co.*, 274 N.C. at 8-9, 161 S.E.2d at 460. Thus, the essential elements of a joint venture are (1) an agreement to engage in a single business venture with the joint sharing of profits, *Edwards v. Bank*, 39 N.C. App. 261, 275, 250 S.E.2d 651, 661 (1979), (2) with each party to the joint venture having a right in some measure to direct the conduct of the other "*through a necessary fiduciary relationship.*" *Cheape v. Town of Chapel Hill*, 320 N.C. 549, 562, 359 S.E.2d 792, 799 (1987) (emphasis in original). The second element requires that the parties to the agreement stand in the relation of principal, as well as agent, as to one another. *Id.* at 562, 359 S.E.2d 799-800.

Viewed in the light most favorable to plaintiffs, we find the evidence insufficient to establish that the parties' business relationship was a joint venture.

First, plaintiffs failed to allege in their complaint that they were entitled to share in defendants' profits under the terms of the agreement. Rather, plaintiffs alleged that defendants were obligated to pay a sum certain of $250,000.00, with $50,000.00 to be paid at the outset

of the relationship as an advance good faith payment, and $200,000.00 to be paid at the end of the parties' relationship in exchange for an undetermined number of plaintiffs' business assets.

Chesson confirmed this aspect of the parties' agreement in his deposition. Chesson repeatedly testified that defendants would have satisfied their obligations under the agreement by paying him or SES a sum certain, or a sum certain and some combination of properly secured notes. Chesson further stated defendants were obligated to pay $250,000.00 even if defendants never made a profit. Chesson also stated that, even if defendants had generated millions of dollars in profits, they still would have owed only $250,000.00 under the terms of the agreement. That the end result of the parties' agreement would be defendants essentially taking over plaintiffs' fireproofing business does not establish that the agreement was a joint venture. Rather, when viewed in the light most favorable to plaintiffs, the evidence shows defendants agreed to purchase the assets of plaintiffs' business, but only after a five-month period during which Chesson would work for defendants in a capacity that would enable defendants to learn the fireproofing business.

In addition, we find little in the alleged agreement to indicate that it established a principal-to-agent relationship between the parties. The Supreme Court has defined an agent as " 'one who acts for or in the place of another by authority from him.' " *Id.* at 562, 359 S.E.2d at 800 (quoting *Julian v. Lawton*, 240 N.C. 436, 440, 82 S.E.2d 210, 213 (1954)). Under the parties' agreement, Chesson was responsible for teaching all aspects of the fireproofing business to defendants. Chesson shared his knowledge and experience with defendants and assisted them in making bids on fireproofing projects. With twenty years of experience in the fireproofing business, Chesson's input on bids and other operational decisions carried great weight in the final decision. However, Chesson testified that he could only recommend a bid to defendants. The ultimate decision whether to accept a job, and at what price, was left to defendants. Accordingly, there is nothing in the agreement that establishes Chesson and SES as agents of the individual defendants and BTU. Likewise, there is nothing that establishes defendants as agents of plaintiffs. Thus, the agreement fails to place the parties in the relation of principal, as well as agent, as to each other. Having failed to establish a joint sharing of profits, or the necessary fiduciary relationship between the parties, plaintiffs have failed to establish a joint venture.

SOUTHEASTERN SHELTER CORP. v. BTU, INC.

[154 N.C. App. 321 (2002)]

We must now address whether plaintiffs' claims are dependent on the existence of a joint venture. If so, the trial court did not err in dismissing them at the summary judgment stage. If not, the trial court's decision must be reversed and the cause remanded for trial on those claims.

## Breach of Fiduciary Duties

[2] In their first claim for relief, plaintiffs allege the parties entered into a joint venture, plaintiffs placed special trust and confidence in defendants, and defendants owed plaintiffs "the highest fiduciary duties." Plaintiffs further allege defendants breached their fiduciary duties arising from the parties' joint venture. It is clear from the complaint that plaintiffs' breach of fiduciary duties claim is dependent on the existence of the joint venture. Having failed to show the elements of a joint venture, plaintiffs have necessarily failed to show the existence of a fiduciary duty to support a claim for breach of fiduciary duties. Accordingly, the trial court did not err in entering summary judgment against plaintiffs on their first claim.

## Constructive Fraud

[3] Plaintiffs' next claim is one for constructive fraud. In order to prove constructive fraud, plaintiffs must show a relationship of trust and confidence that led up to the consummation of a transaction in which defendants took advantage of this trust and confidence to the detriment of plaintiffs. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (citing *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). Here, plaintiffs allege that defendants' scheme to induce plaintiffs to perform the joint venture and then disavow their own duties to perform constitutes a breach of the fiduciary duties of good faith, fair dealing, honesty, and loyalty. Plaintiffs further contend that defendants' misconduct "constitutes bad faith, reckless indifference . . . and self-dealing by fiduciaries, and constitutes constructive fraud." Plaintiffs' constructive fraud claim is based on a relationship of trust and confidence that allegedly arose from the parties' joint venture. Having failed to show a joint venture, plaintiffs cannot maintain their constructive fraud claim.

## Unfair and Deceptive Trade Practices

[4] Plaintiffs allege that the parties' joint venture in the fireproofing contracting business was "in or affecting commerce," and that defendants' conduct in connection with the joint venture was unfair and deceptive.

A trade practice is unfair and deceptive when it offends established public policy as well as when the practice is immoral, unethical, oppressive, or unscrupulous. *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367, 533 S.E.2d 827, 832, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). In essence, an unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position. *Id.*

However, "[i]t is well recognized . . . that actions for unfair and deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) (citations omitted). To recover for unfair and deceptive trade practices, a party must show substantial aggravating circumstances attending the breach of contract. *Id.* It is " 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.' " *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 333 (4th Cir. 1994)).

Here, by the language in the complaint, plaintiffs have tied their unfair and deceptive trade practices claim to the existence of a joint venture. Having failed to show a joint venture, plaintiffs cannot proceed on their unfair and deceptive trade practices claim. We further note that while plaintiffs have presented sufficient evidence of a contractual relationship between the parties, they have failed to show sufficient aggravating circumstances to maintain an action for unfair and deceptive trade practices.

## Unjust Enrichment

[5] In order to recover on a claim of unjust enrichment, a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party. *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). An unjust enrichment claim is neither in tort nor contract "but is described as a claim in quasi contract or a contract implied in law." *Booe*, 322 N.C. at 570, 369 S.E.2d at 556. "The claim is not based on a

SOUTHEASTERN SHELTER CORP. v. BTU, INC.

[154 N.C. App. 321 (2002)]

promise but is imposed by law to prevent an unjust enrichment." *Id.* If there is a contract between the parties, the contract governs the claim and the law will not imply a contract. *See Concrete Co. v. Lumber Co.*, 256 N.C. 709, 124 S.E.2d 905 (1962).

Viewed in the light most favorable to plaintiffs, the evidence shows that the parties entered into a contract. However, plaintiffs failed to assert a claim for breach of contract. Since a contract exists between the parties, the law will not imply a contract. Therefore, plaintiffs may not maintain a claim for unjust enrichment.

## Conversion

[6] "Conversion is the unauthorized assumption and exercise of right of ownership over goods or personal property belonging to another to the alteration of their condition or the exclusion of the owner's rights." *Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 93, 394 S.E.2d 824, 831 (1990).

Viewed in the light most favorable to plaintiffs, the evidence shows defendants converted plaintiffs' proprietary information, including customer lists, contact lists, records and historical data. The evidence also shows defendants removed certain tangible personal property belonging to plaintiffs, including a photocopier, gas paint sprayer, air compressor, and computer software. According to the terms of the parties' agreement, defendants were not entitled to any of plaintiffs' assets until the end of the business relationship when the parties had agreed on asset valuations and plaintiffs had received the $200,000.00 balance due under the agreement. Thus, the fact the parties had a contract does not prevent plaintiffs' claim for conversion.

In conclusion, we hold that the trial court did not err in its determination that, as a matter of law, the parties' agreement was not a joint venture. Accordingly, we affirm the trial court's grant of summary judgment to defendants on plaintiffs' claims for breach of fiduciary duties, constructive fraud and unfair and deceptive trade practices. We likewise affirm the trial court's entry of summary judgment on plaintiffs' unjust enrichment claim. However, we reverse summary judgment on plaintiffs' conversion claim and remand for a trial on the merits as to that claim.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and HUDSON concur.